NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

DANIEL ORIAKHI,                    :
                                   :    Civil Action No. 09-1444 (RMB)
             Plaintiff,            :
                                   :
        v.                         :    **OPINION**
                                   :
MICHAEL W. CARROLL, et al.,        :
                                   :
             Defendants.           :

APPEARANCES:

Plaintiff pro se
Daniel Oriakhi
USP Beaumont
P.O. Box 26030
Beaumont, TX 77720

**BUMB**, District Judge

        Plaintiff Daniel Oriakhi, a prisoner currently confined at
the United States Penitentiary at Beaumont, Texas, seeks to bring
this action in forma pauperis pursuant to Bivens v. Six Unknown
Fed. Narcotics Agents, 403 U.S. 388 (1971), alleging violations
of his constitutional rights.  Based on his affidavit of
indigence and the absence of three qualifying dismissals within
28 U.S.C. §1915(g), the Court will grant Plaintiff's application
to proceed in forma pauperis pursuant to 28 U.S.C. § 1915(a) and
order the Clerk of the Court to file the Complaint and Amended
Complaint.

At this time, the Court must review the Amended Complaint to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.

I.   <u>BACKGROUND</u>

The following factual allegations are taken from Plaintiff's Amended Complaint and are accepted as true for purposes of this review.

Plaintiff was convicted, in 1992, in the United States District Court for the District of Maryland, of various drug-related offenses, and was sentenced to a term of imprisonment of 300 months.   <u>See</u> <u>United States v. Oriakhi</u>, Criminal No. 92-0283 (D. Md.).[1]   Plaintiff is currently confined pursuant to that conviction.

Plaintiff alleges that on April 11, 2007, he was involved in an altercation with a fellow prisoner, Defendant Laureano Reyes, while confined at the Federal Correctional Institution at Fort Dix, New Jersey.   Plaintiff alleges that Reyes stole certain

---

[1] This Court will take judicial notice of the dockets of this and other federal courts in cases related to this Petition. <u>See</u> Fed.R.Evid. 201; <u>Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd.</u>, 181 F.3d 410, 426-27 (3d Cir. 1999) (federal court, on a motion to dismiss, may take judicial notice of another court's opinion, not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity).

items of personal property from Plaintiff's locker and that he dirtied Plaintiff's cell by placing human feces under Plaintiff's pillow.  As a result of the altercation, both Plaintiff and Reyes were handcuffed and taken to the Lieutenant's office.

Plaintiff alleges that, a few days prior to the altercation, he had complained to unit staff Ms. Fischer and Ms. Williams that Reyes had taken some of his personal property.  Plaintiff alleges that Bureau of Prisons staff allowed an atmosphere to develop in which Reyes felt free to steal from and bully Plaintiff.

Plaintiff alleges that Defendant William Langehennig deliberately handcuffed him too tightly, causing pain.  Plaintiff alleges that when he complained about the handcuffs, Defendant Langehennig told him to "shut up."  Plaintiff further alleges that Defendant Langehennig strip searched Plaintiff in the Lieutenant's office, and took certain items of personal property from Plaintiff.  Plaintiff was then transferred to the Special Housing Unit and Defendant Michael W. Carroll issued an incident report against Plaintiff.

In May, 2007, Plaintiff met with two investigators, who are not named as defendants here.  One investigator advised Plaintiff that he would recommend that the incident report be rewritten to a lesser infraction, *201, fighting.

An incident hearing was conducted 44 days after Plaintiff's initial detention in the SHU.  The result of that hearing was a

3

recommendation to the Disciplinary Hearing Officer to issue an incident report for infraction *224, simple assault.

A hearing was held before the DHO on July 5, 2007. That day, the DHO imposed sanctions of 30-days disciplinary segregation, 27 days loss of good conduct time, 90-days loss of commissary, visits, and telephone privileges.

Plaintiff alleges that the hearing delay deprived him of his right to due process. Plaintiff does not here challenge the results of the hearing. Instead, Plaintiff alleges that he was detained in the SHU for an excessive period of time in order to cause him psychological and physiological harm and in order to prevent him from having use of the law library in connection with a pending habeas action.[2]

_____

[2] At the time of these disciplinary proceedings, Plaintiff had pending before the United States Court of Appeals for the Fourth Circuit an appeal from the dismissal of a 28 U.S.C. § 2255 motion as successive. See United States v. Oriakhi, No. 06-6445 (4th Cir.); United States v. Oriakhi, Crim. No. 92-0283 (D. Md.) and Civil No. 05-2317 (D. Md.). On June 18, 2007, the Court of Appeals entered an opinion and order vacating the District Court's dismissal order and remanding the matter for further proceedings.

On July 11, 2007, the District Court issued an Order directing the government to file an answer to the § 2255 Motion to Vacate. The government filed its answer on August 10, 2007. On August 23, 2007, the District Court issued an Order granting Plaintiff twenty days to file a reply. On September 20, 2007, the District Court entered its Order granting Plaintiff an extension of time to file a reply until November 30, 2007. On December 12, 2007, the District Court entered its Opinion and Order dismissing the Motion to Vacate as untimely. On February 1, 2008, Plaintiff filed a motion for reconsideration. On March 6, 2008, the District Court entered its Order granting and

Plaintiff alleges that the confinement in SHU caused him to suffer psychological stress and physiological harm, in the form of seizures, spasms, frequent cold sweats, stomach ailments, fevers and shivering, high blood pressure, anemia, and headaches, which required medical attention and psychological counseling with a clinical psychologist.  Plaintiff admits that he received medical attention for his various ailments.

On or about September 28, 2007, Plaintiff was transported to a Hold-Over Section, which he describes as "similar" to SHU, at the United States Penitentiary at Lewisburg, Pennsylvania.  On or about October 5, 2007, Plaintiff arrived at the Federal Correctional Institution - McKean, in Bradford, Pennsylvania, where he was placed in the general population.

Plaintiff alleges that, "at some point," Defendant Captain Pena informed Plaintiff that he wondered why Plaintiff was still in the SHU, and promised to look into the matter, but nothing changed.

Plaintiff also alleges that his brother, Felix Oriakhi, who was in the general population, was not permitted to assist Plaintiff with his legal matters because Defendant Michael Carroll terminated the pre-existing correspondence approval.

---

denying in part the motion for reconsideration, considering the supplemental information provided by Plaintiff but still holding that the Motion to Vacate was untimely.  Plaintiff's appeal from the dismissal remains pending.  See United States v. Oriakhi, No. 08-8224 (4th Cir.).

Plaintiff alleges that Defendant Carroll reinstated the correspondence approval approximately 60 days after terminating the approval.  Even after reinstating the correspondence approval, Defendant Carroll would not permit internal hand delivery of correspondence, but required that correspondence be mailed, while he then held the mail for several days, with the intention to cause Plaintiff to miss court filing deadlines.

Plaintiff alleges that the following defendants conspired to violate his rights to due process, under the Fifth Amendment, and to freedom from cruel and unusual punishment, under the Eighth Amendment, by confining him for an excessive period of time in SHU: Unit Manager Michael W. Carroll, Case Manager William Langehennig,[3] Case Manager Coordinator Ms. Brossad, Captain Odom, Captain Pena, Associate Warden Alexandra, Associate Warden Maye, and Warden Charles E. Samuels, Jr.[4]  Plaintiff alleges that Defendant Langehennig took personal property valued at $270 from him.  This Court also construes the Amended Complaint as

_____

[3] Plaintiff also alleges that Defendant Langehennig "retaliated" against Plaintiff because Plaintiff told him his handcuffs were too tight.

[4] Although not dispositive of Plaintiff's claims, the Court notes that attachments to the Complaint suggest that Plaintiff was detained in SHU, in "administrative segregation," immediately preceding and after the conclusion of his "disciplinary segregation," because a determination had been made that his presence in general population posed a potential threat to the security and orderly operation of the institution and to effectuate a transfer.

attempting to assert a claim for deprivation of Plaintiff's constitutional right of access to the courts.  Plaintiff also asserts a state law tort claim against prisoner Laureano Reyes, for the theft of Plaintiff's personal property valued at $700.

Plaintiff seeks compensatory and punitive damages.

II.   STANDARDS FOR A SUA SPONTE DISMISSAL

This Court must dismiss, at the earliest practicable time, certain in forma pauperis and prisoner actions that are frivolous, malicious, fail to state a claim, or seek monetary relief from a defendant who is immune from such relief.  See 28 U.S.C. § 1915(e)(2) (in forma pauperis actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress from a governmental defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions).

Moreover, no action may be brought by a prisoner with respect to prison conditions unless the prisoner has exhausted available administrative remedies.  42 U.S.C. § 1997e(a).  Specifically, 42 U.S.C. § 1997e(a) provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

"[T]he ... exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or

some other wrong." <u>Porter v. Nussle</u>, 534 U.S. 516, 532 (2002) (citation omitted).  Although failure to exhaust is an affirmative defense which must be pled by the defendant, a district court has inherent power to dismiss a complaint which facially violates this bar to suit.  <u>See</u> <u>Ray v. Kertes</u>, 285 F.3d 287, 293 n.5 (3d Cir. 2002); <u>Nyhuis v. Reno</u>, 204 F.3d 65 (3d Cir. 2000).

In determining the sufficiency of a <u>pro</u> <u>se</u> complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  <u>Haines v. Kerner</u>, 404 U.S. 519, 520-21 (1972); <u>United States v. Day</u>, 969 F.2d 39, 42 (3d Cir. 1992).  The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  <u>Morse v. Lower Merion School Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997).

A complaint is frivolous if it "lacks an arguable basis either in law or in fact."  <u>Neitzke v. Williams</u>, 490 U.S. 319, 325 (1989) (interpreting the predecessor of § 1915(e)(2), the former § 1915(d)).  The standard for evaluating whether a complaint is "frivolous" is an objective one.  <u>Deutsch v. United States</u>, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

In addition, any complaint must comply with the pleading requirements of the Federal Rules of Civil Procedure.

Rule 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  A complaint must plead facts sufficient at least to "suggest" a basis for liability.  Spruill v. Gillis, 372 F.3d 218, 236 n.12 (3d Cir. 2004).  "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Erickson v. Pardus, 127 S.Ct. 2197, 2200 (2007) (citations omitted).

> While a complaint ... does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, see Papasan v. Allain, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). Factual allegations must be enough to raise a right to relief above the speculative level ... .

Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1964-65 (2007) (citations omitted).

The Supreme Court then applied these general standards to a Sherman Act conspiracy claim.

> In applying these general standards to a § 1 [conspiracy] claim, we hold that stating such a claim requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made.  Asking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement.  And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and "that a recovery is very remote and unlikely." ...  It

9

makes sense to say, therefore, that an allegation of
parallel conduct and a bare assertion of conspiracy
will not suffice.  Without more, parallel conduct does
not suggest conspiracy, and a conclusory allegation of
agreement at some unidentified point does not supply
facts adequate to show illegality.  Hence, when
allegations of parallel conduct are set out in order to
make a § 1 claim, they must be placed in a context that
raises a suggestion of a preceding agreement, not
merely parallel conduct that could just as well be
independent action.

The need at the pleading stage for allegations
plausibly suggesting (not merely consistent with)
agreement reflects the threshold requirement of Rule
8(a)(2) that the "plain statement" possess enough heft
to "sho[w] that the pleader is entitled to relief."  A
statement of parallel conduct, even conduct consciously
undertaken, needs some setting suggesting the agreement
necessary to make out a § 1 claim; without that further
circumstance pointing toward a meeting of the minds, an
account of a defendant's commercial efforts stays in
neutral territory. ...

Twombly, 127 S.Ct. at 1965-66 (citations and footnotes omitted).

The Court of Appeals for the Third Circuit has held, in the

context of a § 1983 civil rights action, that the Twombly

pleading standard applies outside the § 1 antitrust context in

which it was decided.  See Phillips v. County of Allegheny, 515

F.3d 224, 234 (3d Cir. 2008) ("we decline at this point to read

Twombly so narrowly as to limit its holding on plausibility to

the antitrust context").

Context matters in notice pleading.  Fair notice under
Rule 8(a)(2) depends on the type of case -- some
complaints will require at least some factual
allegations to make out a "showing that the pleader is
entitled to relief, in order to give the defendant fair
notice of what the ... claim is and the grounds upon
which it rests."  Indeed, taking Twombly and the
Court's contemporaneous opinion in Erickson v. Pardus,

10

127 S.Ct. 2197 (2007), together, we understand the
Court to instruct that a situation may arise where, at
some point, the factual detail in a complaint is so
undeveloped that it does not provide a defendant the
type of notice of claim which is contemplated by
Rule 8.  Put another way, in light of Twombly, Rule
8(a)(2) requires a "showing" rather than a blanket
assertion of an entitlement to relief.  We caution that
without some factual allegation in the complaint, a
claimant cannot satisfy the requirement that he or she
provide not only "fair notice," but also the "grounds"
on which the claim rests.

Phillips, 515 F.3d at 232 (citations omitted).

More recently, the Supreme Court has emphasized that, when
assessing the sufficiency of any civil complaint, a court must
distinguish factual contentions -- which allege behavior on the
part of the defendant that, if true, would satisfy one or more
elements of the claim asserted -- and "[t]hreadbare recitals of
the elements of a cause of action, supported by mere conclusory
statements."  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009).
Although the Court must assume the veracity of the facts asserted
in the complaint, it is "not bound to accept as true a legal
conclusion couched as a factual allegation."  Id. at 1950.  Thus,
"a court considering a motion to dismiss can choose to begin by
identifying pleadings that, because they are no more than
conclusions, are not entitled to the assumption of truth."  Id.

Therefore, after Iqbal, when presented with a
motion to dismiss for failure to state a claim,
district courts should conduct a two-part analysis.
First, the factual and legal elements of a claim should
be separated.  The District Court must accept all of
the complaint's well-pleaded facts as true, but may
disregard any legal conclusions.  Second, a District

11

Court must then determine whether the facts alleged in
the complaint are sufficient to show that the plaintiff
has a "plausible claim for relief."  In other words, a
complaint must do more than allege the plaintiff's
entitlement to relief.  A complaint has to "show" such
an entitlement with its facts.  <u>See</u> <u>Phillips</u>, 515 F.3d
at 234-35.  As the Supreme Court instructed in <u>Iqbal</u>,
"[w]here the well-pleaded facts do not permit the court
to infer more than the mere possibility of misconduct,
the complaint has alleged-but it has not
'show[n]'-'that the pleader is entitled to relief.'"
This "plausibility" determination will be "a
context-specific task that requires the reviewing court
to draw on its judicial experience and common sense."

<u>Fowler v. UPMC Shadyside</u>, 2009 WL 2501662, 5 (3d Cir. August 18,

2009) (citations omitted).

Rule 10(b) of the Federal Rules of Civil Procedure provides:

A party must state its claims ... in numbered
paragraphs, each limited as far as practicable to a
single set of circumstances.  ...  If doing so would
promote clarity, each claim founded on a separate
transaction or occurrence ... must be stated in a
separate count or defense.

Rule 20(a)(2) controls the permissive joinder of defendants

in pro se prisoner actions as well as other civil actions.

Persons ... may be joined in one action as defendants
if:
    (A) any right to relief is asserted against them
jointly, severally, or in the alternative with respect
to or arising out of the same transaction, occurrence,
or series of transactions or occurrences; <u>and</u>
    (B) any question of law or fact common to all
defendants will arise in the action.

(emphasis added).  <u>See</u>, <u>e.g.</u>, <u>Pruden v. SCI Camp Hill</u>, 252

Fed.Appx. 436 (3d Cir. 2007); <u>George v. Smith</u>, 507 F.3d 605 (7th

Cir. 2007).

Where a complaint can be remedied by an amendment, a district court may not dismiss the complaint with prejudice, but must permit the amendment. <u>Denton v. Hernandez</u>, 504 U.S. 25, 34 (1992); <u>Grayson v. Mayview State Hospital</u>, 293 F.3d 103, 108 (3d Cir. 2002) (dismissal pursuant to 28 U.S.C. § 1915(e)(2)); <u>Shane v. Fauver</u>, 213 F.3d 113, 116-17 (3d Cir. 2000) (dismissal pursuant to 42 U.S.C. § 1997e(c)(1)); <u>Urrutia v. Harrisburg County Police Dept.</u>, 91 F.3d 451, 453 (3d Cir. 1996).

III.   <u>Bivens v. Six Unknown Agents</u>

In <u>Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388, 389 (1971), the Supreme Court held that a violation of the Fourth Amendment by a federal agent acting under color of his authority gives rise to a cause of action against that agent, individually, for damages.  The Supreme Court has also implied damages remedies directly under the Eighth Amendment, <u>see</u> <u>Carlson v. Green</u>, 446 U.S. 14 (1980), and under the equal protection component of the Fifth Amendment's Due Process Clause, <u>see</u> <u>Davis v. Passman</u>, 442 U.S. 228 (1979).  But "the absence of statutory relief for a constitutional violation does not necessarily mean that courts should create a damages remedy against the officer responsible for the violation." <u>Schreiber v. Mastrogiovanni</u>, 214 F.3d 148, 152 (3d Cir. 2000) (citing <u>Schweiker v. Chilicky</u>, 487 U.S. 412 (1988).

Relying upon <u>Bivens</u>, several lower federal courts have implied a damages cause of action against federal officers, under the Due Process Clause of the Fifth Amendment, for claims by federal pre-trial detainees alleging inadequate medical care or unconstitutional conditions of confinement.  <u>See</u>, <u>e.g.</u>, <u>Lyons v. U.S. Marshals</u>, 840 F.2d 202 (3d Cir. 1988); <u>Iqbal v. Hasty</u>, 490 F.2d 143 (2d Cir. 2007), <u>petition for cert. filed</u>, 76 U.S.L.W. 3349 (Dec. 17, 2007) (No. 07-0827); <u>Magluta v. Samples</u>, 375 F.3d 1269 (11th Cir. 2004); <u>Loe v. Armistead</u>, 582 F.2d 1291 (4th Cir. 1978), <u>cert. denied</u>, 446 U.S. 928 (1980).

## IV.   <u>ANALYSIS</u>

### A.   <u>Excessive Detention in SHU</u>

A liberty interest protected by the Due Process Clause may arise from either of two sources:  the Due Process Clause itself or state or federal law.  <u>See Hewitt v. Helms</u>, 459 U.S. 460, 466 (1983); <u>Asquith v. Department of Corrections</u>, 186 F.3d 407, 409 (3d Cir. 1999).

With respect to convicted and sentenced prisoners, "[a]s long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight."  <u>Montanye v. Haymes</u>, 427 U.S. 236, 242 (1976), <u>quoted in Hewitt</u>, 459 U.S. at 468 and <u>Sandin v.</u>

14

Conner, 515 U.S. 472, 480 (1995).  Cf. Washington v. Harper, 494
U.S. 210, 221-22 (1990)(prisoner has liberty interest under the
Due Process Clause in freedom from involuntary administration of
psychotropic drugs); Vitek v. Jones, 445 U.S. 480, 493-94
(1980)(prisoner has liberty interest under the Due Process Clause
in freedom from involuntary transfer to state mental hospital
coupled with mandatory treatment for mental illness, a punishment
carrying "stigmatizing consequences" and "qualitatively
different" from punishment characteristically suffered by one
convicted of a crime).

     "Discipline by prison officials in response to a wide range
of misconduct falls within the expected parameters of the
sentence imposed by a court of law."  Sandin, 515 U.S. at 485
(upholding prisoner's sentence of 30 days' disciplinary
segregation following a hearing at which he was not permitted to
produce witnesses).  See also Asquith, 186 F.3d at 410-11 (no
liberty interest under the Due Process Clause in remaining in
halfway house).

     Governmental entities, however, may confer on prisoners
liberty interests that are protected by the Due Process Clause.
"But these interests will be generally limited to freedom from
restraint which, while not exceeding the sentence in such an
unexpected manner as to give rise to protection by the Due
Process Clause of its own force, nonetheless imposes atypical and

15

significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484 (finding that disciplinary segregation conditions which effectively mirrored those of administrative segregation and protective custody were not "atypical and significant hardships" in which a state conceivably might create liberty interest). See also Asquith, 186 F.3d at 411-12 (return to prison from halfway house did not impose "atypical and significant hardship" on prisoner and, thus, did not deprive him of protected liberty interest). In Griffin v. Vaughn, 112 F.3d 703, 708-09 (3d Cir. 1997), the Court of Appeals for the Third Circuit held that a 15-month confinement in administrative custody did not impose "atypical and significant hardship," even in the face of state regulation requiring release to the general population after 20 days in the absence of a misconduct charge.[5]  The Court of Appeals did note, however, that if an inmate is committed to undesirable conditions for an atypical period of time in violation of state law, that is a factor to be considered in determining whether the prisoner has been subjected to "atypical and significant hardship" triggering due process protection. Id.

---

[5] Similarly, it is clear that Plaintiff suffered no due process deprivation by any short delay in conducting the disciplinary hearing.  Bureau of Prisons administrative regulations governing the timing of disciplinary hearing procedures do not rise to the level of protectible liberty interests.  See generally Sandin.

Here, Plaintiff alleges that he was confined in the Special Housing Unit from April 11, 2007, until on or about September 28, 2007, and in segregated conditions during his transfer, which was completed when he was returned to general population on October 5, 2007, a combined period of less than six months.  Plaintiff has alleged no conditions of confinement that could be considered "atypical and significant hardship."  Accordingly, Plaintiff has failed to state a claim for violation of his due process rights.

Plaintiff has also alleged that confinement in the SHU amounted to a violation of his rights under the Eighth Amendment to be free from cruel and unusual punishment.

The Eighth Amendment to the United States Constitution prohibits the government from inflicting "cruel and unusual punishments" on those convicted of crimes.  This proscription against cruel and unusual punishments is violated by the "unnecessary and wanton infliction of pain contrary to contemporary standards of decency."  Helling v. McKinney, 509 U.S. 25, 32 (1993).  It is well settled that "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment."  Id. at 31.

To state a claim under the Eighth Amendment, an inmate must allege both an objective and a subjective component.  Wilson v. Seiter, 501 U.S. 294, 298 (1991).  The objective component

17

mandates that "only those deprivations denying 'the minimal civilized measure of life's necessities' ... are sufficiently grave to form the basis of an Eighth Amendment violation." Helling v. McKinney, 509 U.S. at 32 (quoting Rhodes, 452 U.S. at 346). This component requires that the deprivation sustained by a prisoner be sufficiently serious, for only "extreme deprivations" are sufficient to make out an Eighth Amendment claim. Hudson v. McMillian, 503 U.S. 1, 9 (1992).

The subjective component requires that the state actor have acted with "deliberate indifference," a state of mind equivalent to a reckless disregard of a known risk of harm. See Farmer v. Brennan, 511 U.S. 825, 835 (1994); Wilson, 501 U.S. at 303.

A plaintiff may satisfy the objective component of a conditions-of-confinement claim if he can show that the conditions alleged, either alone or in combination, deprive him of "the minimal civilized measure of life's necessities," such as adequate food, clothing, shelter, sanitation, medical care, and personal safety. Rhodes, 452 U.S. at 347-48; Young v. Quinlan, 960 F.2d 351, 364 (3d Cir. 1992). However, while the Eighth Amendment directs that convicted prisoners not be subjected to cruel and unusual punishment, "the Constitution does not mandate comfortable prisons." Rhodes, 452 U.S. at 349. To the extent that certain conditions are only "restrictive" or "harsh," they are merely part of the penalty that criminal offenders pay for

18

their offenses against society.  Id. at 347.  An inmate may fulfill the subjective element of such a claim by demonstrating that prison officials knew of such substandard conditions and "acted or failed to act with deliberate indifference to a substantial risk of harm to inmate health or safety."  Ingalls v. Florio, 968 F.Supp. 193, 198 (D.N.J. 1997).

Here, Plaintiff has failed to allege any conditions in the SHU that deprived him of "the minimal civilized measure of life's necessities," such as adequate food, clothing, shelter, sanitation, medical care, and personal safety.  To the contrary, he has alleged only that he found removal from the general population stressful and that he suffered various psychological and physical ailments as a result of that stress.  Plaintiff has also alleged, however, that he received treatment for those ailments.  Plaintiff has failed to state a claim for violation of his rights under the Eighth Amendment based upon his confinement in the SHU.

B.   Retaliation Claim

Plaintiff alleges that Defendant Langehennig conspired to detain Plaintiff in the SHU in retaliation for Plaintiff complaining to him that the handcuffs were too tight when Plaintiff was first taken to the Lieutenant's office and to SHU.

Retaliation claims survive Sandin, even when the retaliatory action does not involve a liberty interest.  Allah v. Seiverling,

19

229 F.3d 220, 223-24 (3d Cir. 2000).  To prevail on a retaliation claim, a plaintiff must demonstrate that (1) he engaged in constitutionally-protected activity; (2) he suffered, at the hands of a state actor, adverse action "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights;" and (3) the protected activity was a substantial or motivating factor in the state actor's decision to take adverse action.  Rauser v. Horn, 2001 WL 185120 (3d Cir. 2001) (quoting Allah, 229 F.3d at 225).  See also Anderson v. Davila, 125 F.3d 148, 160 (3d Cir. 1997) (citing Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274 (1977)); Thaddeus-X v. Blatter, 175 F.3d 378, 386-99 (6th Cir. 1999), cited with approval in Allah, 229 F.3d at 225.

The facts alleged here are not sufficient to show that Plaintiff has a "plausible claim for relief" for retaliation. All that Plaintiff has alleged is a temporal connection between his complaint to Defendant Langehennig that his handcuffs were too tight, when he was initially transported to the Lieutenant's office, admittedly for being involved in a fight with another prisoner, and the subsequent five-month assignment to the SHU. In light of the context in which Plaintiff makes his claim -- that he was detained in the SHU for a five-month period during the investigation of an infraction, the service of his disciplinary segregation term, and the preparation for transfer -

20

- it is not plausible that Plaintiff's isolated remarks to
Defendant Langehennig about his handcuffs being tight were "a
substantial or motivating factor" in the decision to detain him
in the SHU.  Cf. Gans v. Rozum, No. 06-62J, 2007 WL 257127, *6
(W.D. Pa. Aug. 31, 2007) (mere temporal connection between filing
of civil rights complaint and exercise restriction is "too thin a
reed" on which to hang a retaliation claim), aff'd, 267 Fed.Appx.
178 (3d Cir.) (unpubl.), cert. denied, 129 S.Ct. 84 (2008); Lopez
v. Beard, No. 08-3699, 2009 WL 1705674 (3d Cir. June 18, 2009)
(allegation of that denial of visitation on two occasions was in
retaliation for filing grievances is frivolous).

This claim will be dismissed with prejudice.

C.   Claim for Property Taken by Defendant Langehennig

Plaintiff seeks compensation for personal property allegedly
taken from him on April 11, 2007 during a search by Defendant
Langehennig.

With very limited exceptions, the Federal Employees
Liability Reform and Tort Compensation Act ("Liability Reform
Act"), 28 U.S.C. § 2679, immunizes federal employees from
liability if they commit negligent or wrongful acts or omissions
while acting within the scope of their office or employment.
This general rule that federal officers are not liable for
conduct arising within the scope of their employment "does not
extend or apply to a civil action against an employee of the

Government--(A) which is brought for a violation of the Constitution of the United States, or (B) which is brought for a violation of a statute of the United States under which such action against an individual is otherwise authorized." 28 U.S.C. § 2679(b)(2). This immunity applies even where federal law does not otherwise provide a remedy against the United States. See U.S. v. Smith, 499 U.S. 160, 166 (1991).

Thus, for most such claims, the exclusive remedy is an action against the United States,[6] itself, under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 et seq., which represents a limited waiver of the sovereign immunity of the United States. 28 U.S.C. § 2679(b)(1).[7] The Federal Tort Claims Act gives a district court exclusive jurisdiction over civil actions:

> [1] against the United States, [2] for money damages,
> ... [3] for injury or loss of property, ... [4] caused
> by the negligent or wrongful act or omission of any
> employee of the Government [5] while acting within the
> scope of his office or employment, [6] under
> circumstances where the United States, if a private

---

[6] Upon certification by the Attorney General that an employee was acting within the scope of employment, the United States is substituted as a defendant. 28 U.S.C. § 2679(d)(1).

[7] The United States has sovereign immunity except where it consents to be sued. United States v. Mitchell, 463 U.S. 206, 212 (1983). In the absence of such a waiver of immunity, a plaintiff cannot proceed in an action for damages against the United States or an agency of the federal government for alleged deprivation of a constitutional right, see FDIC v. Meyer, 510 U.S. 471, 484-87 (1994), or against government employees in their official capacities, see Kentucky v. Graham, 473 U.S. 159, 166 (1985) (a suit against a government officer in his or her official capacity is a suit against the government).

person, would be liable to the claimant in accordance
with the law of the place where the act or omission
occurred.

Deutsch v. United States, 67 F.3d 1080, 1091 (3d Cir. 1995)

(quoting 28 U.S.C. § 1346(b)); see also Federal Deposit Ins.

Corp. v. Meyer, 510 U.S. 471, 477 (1994); United States v. Muniz,

374 U.S. 150 (1963).

Taking these provisions into account, Plaintiff can proceed

against the Defendants here only if (1) one of the exceptions to

individual immunity contained in § 2679(b)(2) applies or (2) the

claim is otherwise valid against the United States pursuant to

the Federal Tort Claims Act.

The exception under § 2679(b)(2)(A) for claims arising

directly under the Constitution relates to claims permitted by

Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388 (1971).

In Bivens, the Supreme Court held that a violation of the Fourth

Amendment prohibition against unreasonable searches and seizures

by a federal agent acting under color of his authority gives rise

to a cause of action against that agent, individually, for

damages.  The Supreme Court has also implied damages remedies

directly under the Eighth Amendment, see Carlson v. Green, 446

U.S. 14 (1980), and under the equal protection component of the

Fifth Amendment's Due Process Clause, see Davis v. Passman, 442

U.S. 228 (1979).  The Court of Appeals for the Third Circuit has

implied a Bivens-type remedy under the First Amendment to redress

alleged retaliation by prison officials against a prisoner who
had exercised his right of access to the courts by initiating a
civil rights action against prison officials.  See Milhouse v.
Carlson, 652 F.2d 371 (3d Cir. 1981).  But "the absence of
statutory relief for a constitutional violation does not
necessarily mean that courts should create a damages remedy
against the officer responsible for the violation."  Schreiber v.
Mastrogiovanni, 214 F.3d 148, 152 (3d Cir. 2000) (citing
Schweiker v. Chilicky, 487 U.S. 412 (1988)).

Here, Plaintiff has failed to allege any conduct by
Defendant Langehennig that would give rise to a damages remedy
under any of the traditionally-recognized Bivens-type actions.
Nor does the exception under § 2679(b)(2)(B) for "violation of a
statute of the United States under which such action against an
individual is otherwise authorized" apply in the circumstances of
this case.  Thus, Plaintiff has failed to state a claim against
Defendant Langehennig under an exception to the Liability Reform
Act.

That leaves the Federal Tort Claims Act as Plaintiff's sole
potential remedy with respect to the deprivation-of-property
claim asserted against Defendant Langehennig.  However, the FTCA
waiver of sovereign immunity does not apply to certain types of
torts, as follows:

> The provisions of this chapter and section 1346(b) of
> this title shall not apply to–

24

...

(c) Any claim arising in respect of the assessment or collection of any tax or customs duty, or the detention of any goods, merchandise, or other property by any officer of customs or excise or any other law enforcement officer, except that the provisions of this chapter and section 1346(b) of this title apply to any claim based on injury or loss of goods, merchandise, or other property, while in the possession of any officer of customs or excise or any other law enforcement officer, if--

    (1) the property was seized for the purpose of forfeiture under any provision of Federal law providing for the forfeiture of property other than as a sentence imposed upon conviction of a criminal offense;

    (2) the interest of the claimant was not forfeited;

    (3) the interest of the claimant was not remitted or mitigated (if the property was subject to forfeiture); and

    (4) the claimant was not convicted of a crime for which the interest of the claimant in the property was subject to forfeiture under a Federal criminal forfeiture law. ...

28 U.S.C. § 2680.

In <u>Ali v. Federal Bureau of Prisons</u>, 128 S.Ct. 831 (2008), the Supreme Court held that BOP officers are immune, under 28 U.S.C. § 2680(c), for any negligent or wrongful acts in connection with the detention of prisoners' property.  Instead, Congress has provided an administrative remedy for such deprivation-of-property claims.  <u>See</u> 31 U.S.C. § 3723(a)(1); <u>Ali</u>, 128 S.Ct. at 841, n.7.  Accordingly, this claim must be dismissed with prejudice.

25

D.   Access to Courts Claim

Plaintiff alleges that he was not able to litigate the pending appeal of a § 2255 motion to vacate while he was confined in SHU.

The constitutional right of access to the courts is an aspect of the First Amendment right to petition the government for redress of grievances.  Bill Johnson's Restaurants, Inc. v. NLRB, 461 U.S. 731, 741 (1983).  In addition, the constitutional guarantee of due process of law has as a corollary the requirement that prisoners be afforded access to the courts in order to challenge unlawful convictions and to seek redress for violations of their constitutional rights.  Procunier v. Martinez, 416 U.S. 396, 419 (1974), overruled on other grounds, Thornburgh v. Abbott, 490 U.S. 401, 413-14 (1989).  See also Peterkin v. Jeffes, 855 F.2d 1021, 1036 n.18 (3d Cir. 1988) (chronicling various constitutional sources of the right of access to the courts).

In Bounds v. Smith, 430 U.S. 817, 828 (1977), the Supreme Court held that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law."  The right of access to the courts is not, however, unlimited.  "The tools [that

26

Bounds] requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any <u>other</u> litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." <u>Lewis v. Casey</u>, 518 U.S. 343, 355 (1996) (emphasis in original).

There is no "abstract, freestanding right to a law library or legal assistance, [and] an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense. ... [T]he inmate therefore must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a [non-frivolous] legal claim. He might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known. Or that he had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable to file even a complaint." <u>Lewis</u>, 518 U.S. at 351.

In describing the scope of services which must be provided by the state to indigent prisoners, the Supreme Court has stated,

27

"[i]t is indisputable that indigent inmates must be provided at state expense with paper and pen to draft legal documents, with notarial services to authenticate them, and with stamps to mail them. ... This is not to say that economic factors may not be considered, for example, in choosing the methods used to provide meaningful access. But the cost of protecting a constitutional right cannot justify its total denial." Bounds, 430 U.S. at 824-25, clarified on other grounds, Lewis v. Casey, 518 U.S. 343. Thus, "there is no First Amendment right to subsidized mail or photocopying. [Instead], the inmates must point to evidence of actual or imminent interference with access to the courts." Reynolds v. Wagner, 128 F.3d 166, 183 (3d Cir. 1997).

Moreover, a prisoner alleging a violation of his right of access must show that prison officials caused him past or imminent "actual injury." See Lewis, 518 U.S. at 348-55 and n.3 (1996); Oliver v. Fauver, 118 F.3d 175, 177-78 (3d Cir. 1997).

With respect to Plaintiff's then-pending appeal of the § 2255 motion, Plaintiff cannot establish actual injury. To the contrary, he was able to file appropriate briefs with the Court and the matter was decided on the merits after briefing. This claim must be dismissed with prejudice.

E.    Pendent State Law Claim

In the Amended Complaint, Plaintiff asserts a state-law tort claim against fellow prisoner Laureano Reyes.

28

Pursuant to 28 U.S.C. § 1367(c)(3), where a district court has dismissed all claims over which it has original jurisdiction, it may decline to exercise supplemental jurisdiction over a related state law claim.  The Court of Appeals for the Third Circuit has held that, where all federal claims are dismissed before trial, "the district court <u>must</u> decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so."  <u>Hedges v. Musco</u>, 204 F.3d 109, 123 (3d Cir. 2000) (citations omitted).  As no such extraordinary circumstances appear to be present, this Court will dismiss the state law claim without prejudice.

In the alternative, to the extent this Court could exercise jurisdiction over Plaintiff's state law claim, it appears to be time-barred.  The claim was added in the Amended Complaint dated August 18, 2009, based upon events that took place on or before April 11, 2007, more than two years prior.[8]

---

[8] Pursuant to Rule 15(c) of the Federal Rules of Civil Procedure, the amendment to assert this state-law tort claim against a fellow prisoner does not relate bake to the date of the original Complaint.  The claim does not change the name of a party against whom a prior claim was asserted -- this is a new claim.  All claims asserted in the original Complaint were constitutional claims against federal employees.  Moreover, there is nothing alleged to suggest that Defendant Reyes received timely notice of the action and knew or should have known that the action would have been brought against him <u>but for</u> a mistake concerning his identity.

A court may dismiss a complaint for failure to state a claim, based on a time-bar, where "the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." Bethel v. Jendoco Construction Corp., 570 F.2d 1168, 1174 (3d Cir. 1978) (citation omitted).  Although the statute of limitations is an affirmative defense which may be waived by the defendant, it is appropriate to dismiss sua sponte under 28 U.S.C. § 1915(e)(2) a pro se civil rights claim whose untimeliness is apparent from the face of the Complaint.  See, e.g., Jones v. Bock, 127 S.Ct. 910, 920-21 (2007) (if the allegations of a complaint, "for example, show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim").  See also Pino v. Ryan, 49 F.3d 51, 53 (2d Cir. 1995) (holding, under former § 1915(d) in forma pauperis provisions, that sua sponte dismissal prior to service of an untimely claim is appropriate since such a claim "is based on an indisputably meritless legal theory"); Hunterson v. DiSabato, 2007 WL 1771315 (3d Cir. 2007) ("district court may sua sponte dismiss a claim as time barred under 28 U.S.C. § 1915A(b)(1) where it is apparent from the complaint that the applicable limitations period has run") (citing Jones v. Bock, Pino v. Ryan) (not precedential); Hall v. Geary County Bd. of County Comm'rs, 2001 WL 694082 (10th Cir. June 12, 2001) (unpub.) (applying Pino to current

30

§ 1915(e)); <u>Rounds v. Baker</u>, 141 F.3d 1170 (8th Cir. 1998)(unpub.); <u>Johnstone v. United States</u>, 980 F.Supp. 148 (E.D. Pa. 1997) (applying <u>Pino</u> to current § 1915(e)).  The requirements of 28 U.S.C. § 1915A (governing civil actions in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity) and 42 U.S.C. § 1997e (governing actions brought with respect to prison conditions) that federal courts review and dismiss any complaint that fails to state a claim parallels the provision in 28 U.S.C. § 1915(e).

"[T]he accrual date of a § 1983 cause of action is a question of federal law that is <u>not</u> resolved by reference to state law."  <u>Wallace v. Kato</u>, 127 S.Ct. 1091, 1095 (2007) (emphasis in original).

A claim accrues as soon as the injured party "knew or had reason to know of the injury that constitutes the basis of his action."  <u>Sandutch v. Muroski</u>, 684 F.2d 252, 254 (3d Cir. 1982). <u>See also</u> <u>Oshiver v. Levin, Fishbein, Sedran & Berman</u>, 38 F.3d 1380, 1385 (3d Cir. 1994).  "Plaintiff'S actual knowledge is irrelevant.  Rather, the question is whether the knowledge was known, or through reasonable diligence, knowable.  Moreover, the claim accrues upon knowledge of the actual injury, not that the injury constitutes a legal wrong."  <u>Fassnacht v. United States</u>, 1996 WL 41621 (E.D. Pa. Feb. 2, 1996) (citing <u>Oshiver</u>, 38 F.3d at 1386).  This claim accrued on or before April 11, 2007.

31

Civil rights claims are best characterized as personal injury actions and are governed by the applicable state's statute of limitations for personal injury actions.  See Wilson v. Garcia, 471 U.S. 261, 280 (1985).  Accordingly, New Jersey's two-year limitations period on personal injury actions, N.J. Stat. Ann. § 2A:14-2, governs Plaintiff's claims.  See Montgomery v. DeSimone, 159 F.3d 120, 126 & n.4 (3d Cir. 1998); Cito v. Bridgewater Township Police Dept., 892 F.2d 23, 25 (3d Cir. 1989).  Under N.J. Stat. Ann. § 2A:14-2, an action for an injury to the person caused by a wrongful act, neglect, or default must be commenced within two years of accrual of the cause of action. Cito, 892 F.2d at 25; accord Brown v. Foley, 810 F.2d 55, 56 (3d Cir. 1987).

Unless their full application would defeat the goals of the federal statute at issue, courts should not unravel states' interrelated limitations provisions regarding tolling, revival, and questions of application.  Wilson v. Garcia, 471 U.S. at 269.

New Jersey statutes set forth certain bases for "statutory tolling."  See, e.g., N.J.S.A. § 2A:14-21 (detailing tolling because of minority or insanity); N.J.S.A. § 2A 14-22 (detailing tolling because of nonresidency of persons liable).  New Jersey law permits "equitable tolling" where "the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass," or where a plaintiff has

32

"in some extraordinary way" been prevented from asserting his rights, or where a plaintiff has timely asserted his rights mistakenly by either defective pleading or in the wrong forum. See Freeman v. State, 347 N.J. Super. 11, 31 (citations omitted), certif. denied, 172 N.J. 178 (2002). "However, absent a showing of intentional inducement or trickery by a defendant, the doctrine of equitable tolling should be applied sparingly and only in the rare situation where it is demanded by sound legal principles as well as the interests of justice." Id. None of these tolling principles apply here.

When state tolling rules contradict federal law or policy, in certain limited circumstances, federal courts can turn to federal tolling doctrine. See Lake v. Arnold, 232 F.3d 360, 370 (3d Cir. 2000). Under federal law, equitable tolling is appropriate in three general scenarios:

> (1) where a defendant actively misleads a plaintiff
> with respect to her cause of action; (2) where the
> plaintiff has been prevented from asserting her claim
> as a result of other extraordinary circumstances; or
> (3) where the plaintiff asserts her claims in a timely
> manner but has done so in the wrong forum.

Id. n.9. Again, none of these tolling doctrines apply here. Accordingly, it appears that Plaintiff's state-law tort claim against Defendant Reyes is time-barred.

V.  CONCLUSION

For the reasons set forth above, all claims will be dismissed. It does not appear that Plaintiff could further amend

the Complaint and Amended Complaint to overcome the deficiencies noted herein.  An appropriate order follows.


                                    s/Renée Marie Bumb
                                    Renée Marie Bumb
                                    United States District Judge

Dated: October 23, 2009